IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| JEROMA B.L. KAALAKEA, | ) | CV. NO. 07-00177 DAE KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAII HEALTH SYSTEMS | ) | |
| CORPORATION dba MAUI | ) | |
| MEMORIAL MEDICAL CENTER; | ) | |
| DOE INDIVIDUALS 1-10; DOE | ) | |
| ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
FOR LACK OF SUBJECT MATTER JURISDICTION; AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON
THE MERITS OF PLAINTIFF'S TITLE VII CLAIM

On July 24, 2008, the Court heard Defendant's two motions for

summary judgment.  Venetia K. Carpenter-Asui, Esq., appeared at the hearing on

behalf of Plaintiff; Kristin S. Shigemura, Esq., appeared at the hearing on behalf of

Defendant Hawai`i Health Systems Corporation dba Maui Memorial Medical

Center.  After reviewing the motions and the supporting and opposing memoranda,

the Court DENIES Defendant's Motion for Summary Judgment for Lack of

Subject Matter Jurisdiction ("Jurisdiction MSJ") (Doc. # 43) and GRANTS

Defendant's Motion for Summary Judgment on the Merits of Plaintiff's Title VII

Claim ("Merits MSJ") (Doc. # 45).

BACKGROUND

Defendant Hawai`i Health Systems Corporation ("HHSC") is an

agency and instrumentality of the State of Hawai`i established pursuant to statute.

HHSC does business as Maui Memorial Medical Center ("MMMC"), a 200-bed

hospital located on the island of Maui that employs a staff of approximately 1,300

employees.  MMMC has employed Plaintiff since December 2001, originally as an

emergency hire Kitchen Helper and now as a Dietary Aide.  Dietary Aides' job

duties include, among other things, setting up trays for patients, making diet

changes, assuring accuracy of menus with patient orders, and ensuring proper

nourishment.  Plaintiff is a member of the United Public Workers ("UPW"),

Bargaining Unit 01, Blue Collar Non-Supervisory Employees.

On or around June 9, 2006, Plaintiff filed a charge of discrimination

("First EEOC Charge") against MMMC with the United States Equal Employment

Opportunities Commission ("EEOC") and the Hawai'i Civil Rights Commission

alleging pregnancy discrimination between June 1, 2004 and June 6, 2006.

Plaintiff and MMMC mediated the dispute through the EEOC and executed a

settlement on August 23, 2006 (the "Settlement Agreement").

2

On or around October 4, 2006, Plaintiff filed a second discrimination charge (the "Second EEOC Charge") against MMMC, alleging that acts occurring between July 7, 2006, and August 23, 2006, constituted sex discrimination[1] and retaliation for Plaintiff's filing of the First EEOC Charge.  Specifically, Plaintiff claimed that she did not receive four hours of "change of shift" pay for July 7, 2006, and that she had been spoken to in a loud and disrespectful manner by her supervisor, Lori Veincent.

On March 8, 2007, Plaintiff supplemented her Second EEOC Charge, alleging additional retaliatory incidents from August 25, 2006 onward and simultaneously requesting a right to sue letter (the "Supplementary Charge").  On March 28, 2007, the EEOC terminated its processing of the Second EEOC Charge and issued Plaintiff a right to sue letter (the "Letter").

On March 30, 2007, Plaintiff filed the instant suit against MMMC, alleging retaliation under Title VII of the Civil Rights Act of 1964 and Chapter 378 of the Hawai`i Revised Statutes, breach of contract, and breach of implied contract.

---

[1] Plaintiff only mentions sex discrimination in passing in her Second EEOC Charge and does not discuss it in her Complaint or memorandum in opposition to the instant motion ("Opposition").  As such, the Court does address the issue here.

3

On September 7, 2007, the parties stipulated to dismiss all claims except the Title VII retaliation claim.[2]

Pursuant to the terms of the Settlement Agreement, the parties participated in mediation with retired Judge Riki May Amano on February 12, 2008, and April 14, 2008, in an attempt to resolve the instant dispute.  Mediation was unsuccessful.

On June 12, 2008, MMMC filed the instant motions, both of which Plaintiff opposed in a single filing on July 7, 2008 (Doc. # 55).  On July 11, 2008, MMMC replied (Docs. # 57 & 59).

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main

---

[2] Plaintiff subsequently re-filed her State law-based retaliation and breach of contract claims in State court.

purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

5

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I. <u>Jurisdiction MSJ</u>

MMMC argues that this Court lacks jurisdiction because Plaintiff did not exhaust her administrative remedies for the allegations contained in her Supplementary Charge and Complaint.  Specifically, MMMC contends that because (1) the Second EEOC Charge alleged retaliatory actions occurring between July 7, 2006 and August 23, 2006, (2) Plaintiff did not mark the "continuing action" box on the charging form, and (3) the Supplementary Charge and the instant Complaint allege violations from August 25, 2006 onward, the EEOC was effectively deprived of an opportunity to investigate the claims forming the basis of the instant lawsuit.  Nor was MMMC afforded an opportunity to respond to Plaintiff's supplementary charges because the Letter was issued without any notice to MMMC.  In short, MMMC asserts that Plaintiff's actions effectively circumvented Title VII's goal of encouraging informal conciliation and voluntary compliance.

As expressed at the July 24, 2008 hearing, the Court shares MMMC's concerns regarding Plaintiff's methods here.  Title VII's administrative remedies exist to facilitate settlement prior to the matter becoming a federal law suit.  By filing the Supplementary Charge, which was based on incidents not mentioned in

7

the Second EEOC Charge, simultaneous to the request for a right to sue letter,

Plaintiff deprived both the EEOC and MMMC of an opportunity to investigate and

possibly remediate the allegations.  In so doing, Plaintiff subverted the conciliatory

goal of Title VII, rendered the EEOC a mere bystander, and forced this Court to

expend significant judicial resources on a case of dubious substantive merit, as

discussed in more depth in Section II.

Nonetheless, the Court has jurisdiction over Plaintiff's Title VII

claim.  When an employee seeks judicial relief for incidents not listed in his

original EEOC charge, a federal court may assume jurisdiction over the new claims

if they are "like or reasonably related to the allegations of the EEOC charge."  See

Oubichon v. Northern American Rockwell Corp., 482 F.2d 569, 571 (9th Cir.

1973).  Federal subject matter jurisdiction extends over all allegations of

discrimination that either "fell within the scope of the EEOC's actual investigation

or an EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination."  Freeman v. Oakland Unified School Dist., 291 F.3d

632, 636 (9th Cir. 2002) (quoting B.K.B. v. Maui Police Dept., 276 F.3d at 1091,

1100 (9th Cir. 2002)).  Where claims are not so closely related, however, the

EEOC must be afforded an opportunity to consider disputes before federal suits

commence.  <u>Brown v. Puget Sound Elec. Apprenticeship & Training Trust</u>, 732

F.2d 726, 730 (9th Cir. 1984).

As stated previously, the Second EEOC Charge is premised on two

central allegations, the first specific and the second general: (1) a pay dispute on

July 7, 2006, and (2) incidents where Veincent spoke to Plaintiff in a loud and

disrespectful manner.[3]  The Supplementary Charge, the Complaint, and Plaintiff's

briefs, however, allege numerous incidents of Veincent's improper actions towards

Plaintiff, including, among others, inequitable vacation scheduling and work

assignments.  These incidents share a common alleged perpetrator in Veincent and

are premised upon the same alleged retaliatory motive.  As such, the Court finds

that the allegations in the Complaint are clearly like or reasonably related to the

incidents contained in the Second EEOC Charge and would have been

encompassed by any continuing EEOC investigation.  Notwithstanding Plaintiff's

dubious pre-litigation strategy here, which prevented such an investigation from

occurring, this Court has jurisdiction over Plaintiff's Title VII claim.

While somewhat unclear, MMMC apparently also argues that

Plaintiff's Title VII claim is premised on a state law breach of contract claim of

---

[3] Neither the Supplementary Charge, the Complaint, nor the Opposition
mention, let alone discuss, the July 7, 2006 pay dispute.  As such, the Court does
not consider this incident for purposes of this Order.

both the Settlement Agreement and the applicable Collective Bargaining

Agreement ("CBA") in effect between UPW and MMMC.  As a result, the

argument goes, proof of Plaintiff's Title VII claim is dependent on proof of the

underlying breach of contract claim.  Plaintiff's failure to exhaust her contractual

remedies under the CBA is therefore fatal to her Title VII claim.  Furthermore,

MMMC asserts that section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185, preempts Plaintiff's claim because the claim cannot

be adjudicated without reference to, evaluation, and interpretation of the CBA.

        MMMC's arguments are unavailing.  Initially, the Court notes that the

parties stipulated to a dismissal of Plaintiff's breach of contract claim and that the

matter is currently pending in State court.  MMMC essentially attempts to re-

introduce to this case arguments and issues clearly falling within the ambit of the

dismissed breach of contract claim.  This Court finds that the stipulation effectively

rendered the breach of contract issue separate and distinct from the remaining issue

here – the viability of Plaintiff's Title VII claim.

        Moreover, a plaintiff's Title VII rights exist independent of a

collective bargaining agreement.  Felt v. Atchison, Topeka, Santa Fe Ry. Co., 60

F.3d 1416, 1419 (9th Cir. 1995) (internal quotations and citation omitted).  Issues

pertaining to retaliatory motive are questions of fact pertaining to the conduct of

the employee and the conduct and motivation of the employer, neither of which requires a court to interpret a collective bargaining agreement.  <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 407 (1988).  Thus, Plaintiff's failure to exhaust her administrative remedies under the CBA does not impact this Court's jurisdiction over her retaliation claim.

As to MMMC's argument regarding preemption by the LMRA, the Ninth Circuit has held that section 301 of the LMRA creates a federal cause of action for breach of collective bargaining agreements.  <u>Hayden v. Reickerd</u>, 957 F.2d 1506, 1508 (9th Cir. 1991) (internal citation omitted).  Section 301 preempts all state law causes of action "evaluation of which requires interpretation of a labor contract's terms."  <u>Id.</u> at 1509 (internal quotations and citation omitted).  The Court again finds that Plaintiff's retaliation claim here does not depend on an analysis of the Settlement Agreement or the CBA.  Had MMMC wished to litigate the breach of contract claim in this Court, it should not have stipulated to its dismissal.

Based on the foregoing, the Court DENIES MMMC's Jurisdiction MSJ.

II.  <u>Merits MSJ</u>

MMMC argues that it is entitled to summary judgment on the merits of Plaintiff's Title VII claim because Plaintiff cannot establish a prima facie case of

11

retaliation.  Specifically, MMMC contends that none of the alleged retaliatory actions were materially adverse and, furthermore, there is no evidence of a causal connection between Plaintiff's protected activity and the purported adverse employment actions.  Moreover, MMMC contends that, even if Plaintiff could establish a prima facie case of retaliation, MMMC had legitimate, non-discriminatory business reasons for the complained of actions, which Plaintiff fails to rebut with evidence of pretext.

Plaintiff avers that she satisfies all three elements of a prima facie retaliation claim under Title VII.  Specifically, Plaintiff claims that she engaged in protected activity when she filed her First EEOC Charge on June 6, 2006, and when she filed her Second EEOC charge on October 4, 2006.  As a result of engaging in this protected activity, Plaintiff asserts that she was subjected to adverse actions including, but not limited to, denial of her vacation request, denial of temporary assignments, being spoken to in a loud, harsh tone in comparison to other employees, and improper work assignments and pay.  Finally, Plaintiff contends that she was subjected to these adverse actions because she engaged in protected activity, as established by the close temporal proximity between the protected activity and the alleged retaliatory actions.

Title VII prohibits "an employer [from] discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to establish a retaliation claim, the plaintiff must produce evidence that gives rise to an inference of unlawful retaliation, either through direct evidence of retaliatory intent or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green. See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Direct evidence is evidence which, if believed, proves the fact of retaliatory animus "without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation and citation omitted. As Plaintiff does not allege that there is direct evidence of retaliation here, her Title VII claim is appropriately analyzed under the burden-shifting framework of McDonnell Douglas.

Under that framework, the plaintiff must first establish a prima facie case of retaliation to go forward on her claims. Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000); Ray, 217 F.3d at 1240. A prima facie case of retaliation may be proven through evidence that the plaintiff (1)

13

engaged in a protected activity; (2) was subjected to an adverse employment action; and (3) a causal link exists between the two.  <u>Raad v. Fairbanks North Star Borough School Dist.</u>, 323 F.3d 1185, 1197 (9th Cir. 2003); <u>Ray</u>, 217 F.3d at 1240.

If the plaintiff establishes a prima facie case,

> the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory, [or nonretaliatory] reason for the challenged action.  If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

<u>Chuang</u>, 225 F.3d at 1123-24 (internal quotation marks and citation omitted).

Although evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of [persuasion] remains at all times with the plaintiff."  <u>Texas Dept. of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  "And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133 (2000) (quoting <u>Burdine</u>, 450 U.S. at 253).  That is, the

14

plaintiff may attempt to establish that he was retaliated against "by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. "Moreover, although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom [] on the issue of whether the defendant's explanation is pretextual[.]" Reeves, 530 U.S. at 143 (internal quotations and citations omitted).

For the reasons set forth below, this Court finds that Plaintiff has neither established a prima facie case of retaliation nor rebutted MMMC's proffered non-retaliatory reasons for engaging in the disputed employment actions. Accordingly, summary judgment is warranted with respect to Plaintiff's Title VII claim.

A.  Prima Facie Case

1.  Protected Activity

MMMC acknowledges that the First EEOC Charge satisfies the first prong of a prima facie retaliation claim and the Court concurs with this assessment. "Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging

in other activity intended to 'oppose[]' an employer's discriminatory practices."

Raad, 323 F.3d at 1197 (citing 42 U.S.C. § 2000e-3(a)) (brackets in original).

      2.  Adverse Action

      As to the second prima facie element, MMMC argues that none of the

allegedly retaliatory actions claimed by Plaintiff as the basis for the instant suit rise

to the level of material adversity required by relevant Supreme Court precedent.  In

opposition, Plaintiff, while acknowledging the materially adverse standard, merely

refers to and incorporates the list of alleged retaliatory acts from the facts section

of her Opposition.

      Title VII's anti-retaliation provision protects an individual from

retaliation that produces an injury or harm.  Burlington Northern and Santa Fe

Railway Co. v. White, 548 U.S. 53, 67 (2006).  "[A] plaintiff must show that a

reasonable employee would have found the challenged action materially adverse,

which in this context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination."  Id. (internal quotation and

citations omitted).  Title VII does not set forth "a general civility code for the

American workplace."  Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75,

80 (1998); see Faragher, 524 U.S. at 788, 118 S. Ct. 2275 (judicial standards for

sexual harassment must "filter out complaints attacking 'the ordinary tribulations

16

of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington Northern, 548 U.S. at 68 (internal citation omitted). The anti-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. Id. (citing Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). "It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." Id. Petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. Id.

The Ninth Circuit construes adverse employment action broadly and has found that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); see also Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004); Strother v. S. Cal. Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996); Lyons v. England, 307 F.3d 1092, 1118 (9th Cir. 2002) ("Title VII does not limit its reach only to acts that take the form of cognizable employment actions such as discharge, transfer, or demotion.") (quotation marks

and citation omitted).  Not every employment decision amounts to an adverse

employment action, however.  Ray, 217 F.3d at 1240.  Instead, an adverse

employment action is one that "materially affect[s] the compensation, terms,

conditions, or privileges of . . . employment."  Chuang, 225 F.3d at 1126.

Specifically, the Ninth Circuit has found that actions such as

transferring job duties, issuing undeserved performance ratings, or actions that

negatively affect the employee's compensation are adverse employment actions.

Fonseca, 374 F.3d at 847; Yartzoff v. Thomas, 809 F.2d 13741, 1376 (9th Cir.

1987).  The Ninth Circuit has also found that being excluded from meetings,

seminars, and positions that would have made the employee eligible for salary

increases, and being given a more burdensome work schedule, if proven, were

sufficient to establish adverse employment actions.  Strother, 79 F.3d at 869.

The Court now examines each of Plaintiff's claimed retaliatory

actions to determine if any meet the materially adverse standard.

a.  Denial of Plaintiff's Vacation Request

Plaintiff alleges that she submitted a vacation request for November

24, 2006 to December 8, 2006, and that this request was improperly denied by her

supervisor Veincent on the basis that one of Plaintiff's co-workers had already

been granted vacation for those days.  Plaintiff contends that this denial evinces a

18

retaliatory, pretextual intent because Veincent previously granted as many as four

employees vacation at the same time.

This was not a materially adverse employment action.  First,

Plaintiff's contention that her vacation request was unilaterally "denied" is false.

MMMC granted Plaintiff's request for the second week (December 1, 2006 to

December 8, 2006) but, due to staffing and scheduling issues, denied her request

for the first week (November 24, 2006 to November 30, 2006).

Second, MMMC's actions cannot be construed as adverse to Plaintiff

because they were in conformity with the relevant CBA between MMMC and

UPW.  Section 36.11 of the CBA provides that "[a]n employee shall be granted

vacation leave on the dates and times as approved by the Employer provided, [sic]

that it shall be as close to the requested dates and times as conditions of the

Employer will permit and will not cause forfeiture of vacation leave."  (UPW Unit

1 Agreement ("UPW Agreement"), Ex. 1 at 78, attached to Defs.' Mot. for Summ.

Judg. (emphasis added).)  MMMC provides evidence establishing that: (1)

Plaintiff's request was particularly difficult to accommodate because it

encompassed the weeks immediately following Thanksgiving, which is a very

popular time to take leave; (2) other staff had already requested this time off,

leaving insufficient staff to cover manpower needs if Plaintiff's request was

granted; and (3) the request was made only 10 days prior to the commencement of the proposed leave.  In other words, in keeping with the terms of the CBA, MMMC granted Plaintiff's vacation request to the extent that business conditions allowed. Plaintiff offers no evidence rebutting or contradicting this information.

Third, there is no evidence establishing an improper connection between Plaintiff's engagement in protected activity and the denial of her vacation request.  Plaintiff's sole argument in opposition is that Veincent previously permitted up to four non-complaining employees to take vacation simultaneously. Even if true, this information does not raise a genuine issue of fact as to whether the partial granting of Plaintiff's vacation request was materially adverse because it says nothing about the specific circumstances surrounding the disputed request. Plaintiff offers no evidence suggesting that MMMC's proffered reasons were untrue or somehow not in keeping with the proper handling of a leave request that was filed 10 days before the leave was to be taken, abutted a holiday, and coincided with leave already granted to other staff.  Plaintiff essentially asks this Court to assume that her filing of the First EEOC Charge and the partial granting of her vacation request were inextricably linked, without providing any evidence suggesting as much.  Such cursory argument falls short of establishing that MMMC's actions were materially adverse here.

Fourth, even if Plaintiff could establish a connection between her engagement in protected activity and the denial of her vacation, she still fails to show that MMMC's actions met the Ninth Circuit's materially adverse standard. As discussed above, while the Ninth Circuit construes "adverse employment action" broadly, the court has nonetheless determined that the term refers to actions that materially affect the compensation, terms, conditions, or privileges of employment. Chuang, 225 F.3d at 1126. MMMC's refusal to grant one out of two requested weeks of vacation, in light of the circumstances surrounding this request discussed above, can hardly be construed as materially affecting the conditions or privileges of Plaintiff's employment.

For these reasons, the Court finds that MMMC's November 17, 2006 denial of Plaintiff's vacation request was not materially adverse and, therefore, GRANTS summary judgment on this issue.

### b. Temporary Assignments

MMMC contends that Plaintiff is not entitled to be paid for the eleven dates[4] on which she claims she was improperly denied temporary assignment to the Cook II position and, thus, the failure to supplement Plaintiff's pay for these dates

---

[4] These dates were October 31, 2006 and January 23, February 5, February 16, February 19, March 9, October 3, October 19, October 20, and October 30, 2007.

cannot be deemed materially adverse.  Plaintiff alleges that, on each of these dates, MMMC temporarily assigned Mr. Quema, a less senior Kitchen Helper who had not filed an EEOC complaint, as Cook II in contravention of the Settlement Agreement and CBA and that this constituted a materially adverse employment action.

The Court's careful review of the record indicates that MMMC properly temporarily assigned Mr. Quema on the dates complained of by Plaintiff and, therefore, these actions cannot be considered materially adverse.  Section 16.04 of the CBA provides that temporary assignments shall be made to the "qualified Employee at work in the class immediately below the class of the temporary assignment in the related series with the greatest Baseyard/Workplace or Institutional Workplace seniority.  In the event there is no qualified Employee at work in the next lower class in the related series, the procedure will be continued in the related series until the series has been exhausted."  (UPW Agreement at 26.)  In lay terms, this means that when an employee is absent and a temporary assignment is needed to fill the position, the position is filled by a qualified employee who is at work, immediately below the class of the position to be filled in the related series, and with the greatest seniority.  (Decl. of Lisa Knutson ("Knutson Decl."), ¶ 38, attached to Defs.' Mot. for Summ. Judg.)  MMMC has interpreted the "at work"

22

requirement to mean at work on the same shift and UPW concurs with MMMC's interpretation.  (Id. ¶¶ 39, 47.)

Therefore, short term absences of a Cook II on the first shift are temporarily assigned in the following order of preference: (1) the senior most qualified Dietary Aide on the first shift; if this person declines then; (2) the senior most qualified Kitchen Helper on the second shift; followed by the next most senior qualified Kitchen Helper and so on until all Kitchen Helpers have declined; then (3) the senior most qualified Dietary Aide on the third shift; if this person declines then; (4) the qualified Dietary Aide on the fourth shift, and so on. (Knutson Decl. ¶ 45.)

Both Plaintiff and Mr. Quema are qualified to be temporarily assigned to the Cook II position.  In the time period encompassing the days of which Plaintiff complains, she was usually assigned to the third shift (9:30 a.m. – 6:00 p.m.) or fourth shift (10:00 a.m. – 7:00 p.m.), while Mr. Quema was usually assigned to the second shift (6:30 a.m. – 3:00 p.m.).  (Id. ¶¶ 49-50.)  As a result, when a Cook II on the first shift was absent on a day that both Mr. Quema and Plaintiff were scheduled to work, Mr. Quema usually stood in higher priority for the temporary assignment because he would have been at work at the time the

temporary assignment was made.  This is true even though Mr. Quema has less

institutional seniority and is in a lower position than Plaintiff.  (<u>Id.</u> ¶ 51.)

      While the Court will not individually review each of the eleven

disputed dates here, it is clear that, on each of them, Mr. Quema was either

scheduled to work the shift before Plaintiff or scheduled to work when Plaintiff

was not.  Accordingly, MMMC was entitled, pursuant to the CBA, to temporarily

assign Mr. Quema to the Cook II position on each of the days complained of by

Plaintiff.  (<u>Id.</u> ¶ 53.)  In opposition, Plaintiff merely refers to the facts section of

her memorandum for her argument and offers nothing in the way of contradictory

evidence.  The Court again finds such unsupported reasoning insufficient to

survive a motion for summary judgment.

      In properly doling out temporary assignments and the corresponding

payment for such assignments, MMMC cannot be said to have acted in a way that

was materially adverse to Plaintiff.  The Court hereby GRANTS summary

judgment as to the temporary assignments.

### c.  <u>Meal and Rest Periods</u>

      MMMC argues that Veincent did not act unreasonably or without

cause when she allegedly spoke to Plaintiff in a loud, harsh tone in comparison to

other employees who had not filed an EEOC charge.  Regardless, even if Veincent

24

did speak to Plaintiff in such a manner, MMMC contends that a supervisor's questioning an employee about scheduling and time off matters is not materially adverse as a matter of law.  This Court agrees.

The Court's review of the Complaint and Opposition reveals that each example of Veincent's allegedly coarse treatment of Plaintiff has as a basis questions relating to Plaintiff's schedule and/or work hours.  Specifically, Plaintiff alleges that Veincent spoke to her in a loud and harsh tone: (1) on August 25, 2006, when Plaintiff asked Veincent about alterations to her timesheet; (2) on September 5, 2006, when Veincent spoke to Plaintiff about a change of shift; and (3) on September 26, 2006, when Veincent questioned Plaintiff about eating her lunch at 3:10 p.m.  Turning again to the CBA, section 9.01 states that MMMC "reserves and retains, solely and exclusively, all management rights, powers and authority, including the right of management to manage, control, and direct its work forces and operations except those as may be granted" under the CBA. (UPW Agreement at 8.)  Clearly, as Plaintiff's immediate supervisor, Veincent was entitled to inquire about the scheduling matters in dispute here.

Moreover, even if Veincent did speak to Plaintiff loudly and harshly, such actions do not transform Veincent's attempts to direct Plaintiff's work into an adverse employment action.  As previously discussed, Title VII does not set forth a

general civility code for the American workplace, nor does it seek to regulate personality conflicts and snubbing by supervisors and co-workers. <u>Burlington</u>, 548 U.S. at 68.  Title VII seeks to provide unfettered access to its remedial mechanisms by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, or employers. <u>Id.</u>  "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." <u>Id.</u>  In providing this Court with only inferential, conclusory argument in support of her contention that Veincent treated her differently from her non-complaining co-workers, Plaintiff again falls short of establishing that Veincent's actions were objectively unreasonable or that they materially affected the compensation, terms, conditions, or privileges of her employment.[5]

Based on the foregoing discussion, the Court GRANTS summary judgment with respect to this issue.

---

[5] The Court also notes that, to the extent Plaintiff alleges that Veincent yelled at or spoke inappropriately to other employees, these acts are irrelevant to the instant suit.

d.  Performance Appraisal

MMMC next argues that Plaintiff's claim that she received a "poor" performance appraisal on September 29, 2006, is not only untrue, but also does not constitute a materially adverse employment action.[6]  This Court agrees.

Undeserved performance ratings, in certain circumstances, can constitute an adverse employment action.  Yartzoff, 809 F.2d at 13785.  A mediocre performance rating that does not give rise to any further negative employment action, however, does not constitute an adverse employment action. Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1112-13 (9th Cir. 2000); Hutchinson, 2004 WL 1753391 at *9 (mere criticism of performance, without more, does not rise to the level of an adverse employment action).  In Kortan, the court found that an undeserved rating on an official evaluation was not an adverse employment action since it was not disseminated, and it was not accompanied by a change in work load or assignments, reduction of salary, denial of a raise, suspension, or termination.  Id. at 1113.  Similarly in Lyons, the Ninth Circuit found that the employer's mediocre performance evaluations of the plaintiff were not adverse

---

[6] Plaintiff sets forth no discernible argument in opposition to this point. Instead, Plaintiff apparently contends that Veincent lied about receiving input on the performance appraisal from Cooks Hayase, York, and Hibbard.  Whether or not other employees were consulted and whether Veincent was untruthful about this fact is irrelevant to this Court's immediate determination.

employment actions since the plaintiff had not alleged that the evaluations were published, or that they caused the plaintiff to be relieved of responsibilities or saddled with burdensome tasks.  307 F.3d at 1118; see also Rivera v. England, 360 F. Supp. 2d 1104, 1121 (D. Haw. 2005) (a negative evaluation that does not remain in the employee's personnel file is not an adverse employment action); Kortan, 217 F.3d at 1112-13.

Initially, the Court notes that Plaintiff's claim that her performance appraisal was "poor" is belied by the record.  In fact, Plaintiff received a rating of "Meets Expectations" in every individual performance category and overall. (Employee Performance Appraisal, Ex. 14, attached to Defs.' Mot. for Summ. Judg.)  In no way can this be construed as a "poor" rating.  Regardless, even if Veincent supplemented this written appraisal with negative oral comments, Plaintiff presents no evidence that this purportedly negative evaluation was causally linked to future negative employment actions by MMMC.  Simply put, Title VII does not insulate Plaintiff from constructive feedback on her work performance.

Accordingly, the Court GRANTS summary judgment as to the September 29, 2006 performance appraisal.

e.  <u>Workplace Attire</u>

MMMC asserts that Plaintiff's claim that Veincent treated her disrespectfully when inquiring about her workplace uniform is without merit.  In opposition, Plaintiff appears to argue that, since other employees were not questioned about not wearing their uniform, it was improper for Veincent to so inquire of Plaintiff.  Plaintiff once again misapprehends the extent of Title VII's protections.

The Court does not address the specifics of the uniform dispute, which revolves around whether Veincent inappropriately questioned Plaintiff about her wearing of a spaghetti-strap tank top.  As discussed above, section 9.01 of the CBA allows MMMC to control and direct its workforce and Veincent's alleged questioning of Plaintiff about her attire falls well within the scope of this provision.  Plaintiff's conclusory argument that, because other employees were not similarly questioned, Veincent's actions were somehow adverse, is unavailing and again falls well short of the materially adverse standard.

The Court hereby GRANTS summary judgment to MMMC with respect to Plaintiff's workplace attire claim.

f.  <u>Attendance at UPW Meeting</u>

Lastly, Plaintiff's claim that MMMC failed to treat her with respect and dignity by denying her full attendance at the January 30, 2007 UPW meeting fails.  Plaintiff was allowed to attend the meeting, which was scheduled to last from 9:00 a.m. to 11:00 a.m., up to her scheduled work time of 10:30 a.m.  (Decl. of Lori Veincent, ¶¶ 51, 52, attached to Defs.' Mot. for Summ. Judg.)  On that day, Plaintiff's department was short staffed due to several absences so Veincent asked Plaintiff to report to work at her normal time in order to ensure sufficient manpower.  (<u>Id.</u> ¶ 52).  According to MMMC, Plaintiff's co-worker Javan York was permitted to attend the full meeting because he is the UPW representative and Veincent reasoned that he could advise the absent staff of what had transpired at the meeting.  (<u>Id.</u> ¶ 53.)

As discussed above, section 9.01 of the CBA provides MMMC with the ability to direct and control its employees' work.  Plaintiff provides no evidence that scheduling of employees for purposes of union meetings is dictated or limited by other provisions of the CBA.  Veincent's actions with regard to the UPW meeting, therefore, were not objectively unreasonable nor in contravention of the CBA.  As a result, MMMC cannot be said to have inflicted a materially adverse

employment action on Plaintiff in allowing her to attend the majority of the January 30, 2007 UPW meeting.

    B. <u>Non-retaliatory Reasons & Pretext</u>

      Even assuming Plaintiff could establish a prima facie case of retaliation, summary judgment would still be warranted because MMMC satisfies its burden of production under <u>McDonnell Douglas</u> by articulating legitimate, non-retaliatory reasons for the challenged actions and Plaintiff fails to establish that these reasons were pretextual.  As detailed in Sections I.2.a. through I.2.f., MMMC provided extensive evidence of its legitimate, non-retaliatory reasons for each of Plaintiff's alleged improper actions, all of which were in conformity with the CBA.

      Under the <u>McDonnell Douglas</u> burden shifting framework, if an employer articulates such non-retaliatory reasons for its actions, then the burden shifts back to the employee to show that these reasons were pretextual.  <u>Chuang</u>, 225 F.3d at 1124.  An employee may do this in one of two ways: either directly by persuading the court that a retaliatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence.  <u>Id.</u>

      Plaintiff does not meet this burden here.  In fact, the Court's careful reading of the Opposition indicates that Plaintiff does not even argue that

31

MMMC's reasons for its actions were pretextual.[7]  Instead, Plaintiff relies

exclusively on what she purports is evidence of her prima facie case, which, as

established above, amounts to nothing more than unsupported accusations

regarding her treatment by MMMC.  Plaintiff provides no evidence of MMMC's

retaliatory intent, no evidence of causation between the protected activity and the

alleged adverse actions, and no evidence that MMMC's proffered reasons were

pretextual.  In short, Plaintiff falls well short of meeting her respective burdens

under both the <u>McDonnell Douglas</u> and summary judgment standards.

         Based on the foregoing discussion, this Court GRANTS summary

judgment to MMMC on Plaintiff's Title VII claim because Plaintiff has failed to

establish a prima facie case of retaliation and, regardless, she has failed to rebut

MMMC's legitimate reasons for engaging in the disputed activities.

<u>CONCLUSION</u>

         For the reasons stated above, the Court DENIES MMMC's Motion for

Summary Judgment for Lack of Subject Matter Jurisdiction and GRANTS

---

[7] The term is mentioned only once, in passing, in the entire Opposition.
"This reason was a pretext for retaliation because prior to Plaintiff asking for
vacation it was Supervisor Veincent's practice to give 3-4 employees who had not
filed previous EEOC/HCRC complaints off on the same dates."  (Pls.' Opp. at 4.)

MMMC's Motion for Summary Judgment on the Merits of Plaintiff's Title VII

Claim.

   Judgment shall be entered accordingly.

   IT IS SO ORDERED.

   DATED:  Honolulu, Hawai`i, August 6, 2008.



         _____
         David Alan Ezra
         United States District Judge

Kaalakea v. Hawai`i Health Systems Corporation et al., CV No. 07-00177
DAE/KSC; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION; AND
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON THE MERITS OF PLAINTIFF'S TITLE VII CLAIM